DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Hedy Moss, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to one of her minor children and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Moss is the natural mother of T.K., born June 14, 2006. The child's father is not a party to this appeal. T.K. was born while Moss was serving a sentence of incarceration following a conviction of domestic violence, a crime that Moss perpetrated against one of her older children. Because T.K. was born at 24 weeks' gestation with numerous health issues, she spent the first three months of *Page 2 
her life in the hospital. CSB commenced this dependency action on September 20, 2006, because T.K. was scheduled to be released from the hospital but Moss was still incarcerated and no relatives were available to take custody of the child.
 {¶ 3} Due to all of her medical issues, T.K. was placed in a foster home licensed to care for medically fragile children. On December 28, 2006, the trial court adjudicated T.K. a dependent child. Eight months later, CSB moved for permanent custody of T.K.
 {¶ 4} The permanent custody hearing was held on November 16, 2007. At the beginning of the hearing, Moss's counsel informed the court that he had just learned that Moss was again incarcerated. Counsel requested a continuance of the hearing so that arrangements could be made for his client to be transported to the courthouse to attend the hearing. The trial court denied the request for a continuance.
 {¶ 5} In the alternative, Moss's trial counsel requested that he be permitted to withdraw from representing Moss. He explained that, despite repeated attempts to communicate with his client via telephone and postal mail at any of the telephone numbers and addresses that he had for her, including the address where she had last claimed service by CSB, he had not had any communication with Moss for over four months. Emphasizing that the attorney's phone number and address had remained the same, but his client had never responded to counsel's *Page 3 
communications and apparently never attempted to contact him on her own, the trial court allowed trial counsel to withdraw from representing Moss.
 {¶ 6} Following an evidentiary hearing, the trial court found that T.K. could not be placed with Moss within a reasonable time or should not be placed with her and that permanent custody was in the child's best interest. Consequently, the trial court terminated parental rights and placed T.K. in the permanent custody of CSB. Moss appeals and raises three assignments of error.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY WITHOUT SUFFICIENT EVIDENCE."
 {¶ 7} Moss first contends that there was insufficient evidence before the court to support its permanent custody decision. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. *Page 4 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996),75 Ohio St.3d 95, 99.
 {¶ 8} Moss does not directly challenge either prong of the permanent custody test, but instead contends that she was not given enough time after her release from prison to comply with the requirements of her case plan. The record reflects that there was an eight-month period between Moss's two incarcerations for her to work toward reunification, yet she did almost nothing to remedy the problems that prevented her from caring for her child. Moreover, Moss's parental rights were not terminated due to the passage of time or the so-called "12 of 22" provision of R.C. 2151.414(B)(1)(d). Instead, the trial court found that the first prong of the permanent custody test was satisfied because T.K. could not be placed with Moss within a reasonable time or should not be placed with her, based on an analysis under R.C. 2151.414(E).
 {¶ 9} The trial court found that there existed numerous factors under R.C. 2151.414(E), including that Moss had "demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]" R.C. 2151.414(E)(4).
 {¶ 10} The trial court's finding was fully supported by the evidence presented at the hearing. T.K. was born approximately 16 weeks premature and Moss admitted that she had used drugs and alcohol while she was pregnant. After *Page 5 
the child's birth, however, Moss did very little to demonstrate any willingness to remedy her problems so that she could provide an adequate home for the child.
 {¶ 11} Moss had numerous problems that prevented her from parenting T.K., including untreated mental health and substance abuse problems and a lack of understanding of T.K.'s medical issues, yet she had done almost nothing to resolve any of these issues by the time of the permanent custody hearing. Although Moss spent part of the case planning period in prison and later in jail, there was a period of over eight months that Moss was not incarcerated and was able to work toward reunification with T.K. As the guardian ad litem explained, however, Moss kept telling her that she was going to start working on her case plan, but she never did. The guardian commented that Moss did not seem to be willing to put forth any effort toward reunification.
 {¶ 12} Following Moss's release from prison in February 2007, she did almost nothing to work toward reunification with T.K. She did not work on the goals of her case plan, nor would she talk to her case worker when she came to see her. Moss did not even visit her young child. Transportation was apparently a problem for Moss, but she had turned down offers of transportation to and from visits by several people, including the guardian ad litem and Moss's own adult daughter. Moss's adult daughter came to several visits with T.K., but Moss did not. During a period of over one year following T.K.'s release from the hospital *Page 6 
at age three months, Moss visited the child only two times and attended only one of the child's many medical appointments.
 {¶ 13} The evidence established that Moss had not visited her child, had not begun working on any of the goals of her case plan, and had failed to maintain contact with her attorney, her caseworker, or the juvenile court. Consequently, the trial court did not err in finding that she had demonstrated a lack of commitment toward T.K., within the meaning of R.C. 2151.414(E)(4). The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AND DENIED [MOSS] DUE PROCESS BY NOT TRANSPORTING [MOSS] FROM THE SUMMIT COUNTY JAIL TO THE PERMANENT CUSTODY HEARING, SO SHE COULD ATTEND THE HEARING AS PERMITTED BY R.C. § 2151.352, BY NOT CONTINUING THE HEARING SO SHE COULD ATTEND, AND BY PERMITTING THE [MOSS'S] ATTORNEY TO WITHDRAW."
 {¶ 14} Through her second assignment of error, Moss contends that the trial court erred by failing to order that she be transported to the hearing, by failing to grant a continuance of the hearing, and by allowing her trial counsel to withdraw at the commencement of the hearing.
 {¶ 15} As to Moss's assertion that the trial court erred by failing to have her transported to the hearing, the record reveals that no motion to transport was filed with the court, nor was any such request made at the hearing. Instead, trial counsel appeared at the hearing and indicated to the court that he had just learned *Page 7 
that Moss was again incarcerated and could not be present for the hearing. Thus, he requested a continuance or, alternately, that he be permitted to withdraw from representation of Moss. The trial court denied the continuance and permitted trial counsel to withdraw.
 {¶ 16} The decision whether to grant a request for a continuance of a permanent custody hearing lies within the sound discretion of the trial court, and an appellate court must not reverse the denial of a continuance absent an abuse of discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. Courts should attempt to balance any potential prejudice to the movant against the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. The trial court should consider the surrounding circumstances, including: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the party contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.
 {¶ 17} CSB opposed the request for a continuance, noting that the hearing had already been continued once, and emphasizing that all of CSB's witnesses were present and ready to testify. CSB also stressed that Moss had received notice of the hearing but had not filed any request for a continuance prior to the day of *Page 8 
the hearing. The record further reflects that Moss's need for a continuance was prompted by her failure to communicate with her attorney, CSB, or the court. Given these circumstances, the trial court did not abuse its discretion in refusing to continue the permanent custody hearing.
 {¶ 18} The trial court also permitted trial counsel to withdraw from representation of Moss because she had failed to communicate with him for more than four months. Juv.R. 4(F) provides that "an attorney or guardian ad litem may withdraw only with the consent of the court upon good cause shown." A party's lack of cooperation or failure to communicate with counsel may be good cause for withdrawal. See, e.g.,In re M.L.R., 150 Ohio App.3d 39, 2002-Ohio-5958, at ¶ 17.
 {¶ 19} Moss's counsel explained to the court that he had repeatedly tried to communicate with Moss, by sending letters to all of the addresses that he had for her and by calling the telephone numbers that she had given him, but that he had been unable to reach her for more than four months. Counsel further explained that he had just confirmed that morning that Moss was again incarcerated and that she had been arrested approximately one month earlier. Moss never contacted her trial counsel to inform him that she was again incarcerated, nor did she contact him during the three months prior to her incarceration. Given Moss's failure to communicate with trial counsel, the trial court did not abuse its discretion in allowing counsel to withdraw. The second assignment of error is overruled. *Page 9 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED BY FAILING TO CONSIDER [CSB'S] LACK OF REASONABLE EFFORTS TO REUNIFY THE MINOR CHILD WITH [MOSS]."
 {¶ 20} Finally, Moss contends that the trial court erred by placing T.K. in the permanent custody of CSB because CSB had failed to use reasonable efforts to reunify Moss and T.K.
 {¶ 21} This Court has held that, although CSB is required to prove that it put forth reasonable efforts toward reunification, R.C. 2151.419
requires it to do so at several stages of the proceedings, but not at the permanent custody hearing. See In re K.H., 9th Dist. No. 22765,2005-Ohio-6323, at ¶ 9-10. The Ohio Supreme Court has adopted that interpretation of R.C. 2151.419. See In re C.F., 113 Ohio St.3d 73,2007-Ohio-1104, at ¶ 41-43.
 {¶ 22} On June 19, 2007, after conducting a review hearing, the trial court found that CSB had exerted reasonable efforts toward reunification. Because the record fails to include a transcript of the review hearing at which the relevant evidence was presented, however, this Court must presume propriety of the reasonable efforts finding. SeeKnapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Therefore, the third assignment of error is overruled.
 {¶ 23} The assignments of error are overruled and the judgment of the Summit County Court of Common Please, Juvenile Division, is affirmed.
 Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, P. J., DICKINSON, J., CONCUR *Page 1